[No. 38635.    En Banc.    October 13, 1966.]

THE CORPORATION OF THE CATHOLIC ARCHBISHOP OF SEATTLE, *Respondent,* v. THE CITY OF SEATTLE *et al., Appellants.*\*

*A. L. Newbould, G. Grant Wilcox,* and *Jorgen G. Bader,* for appellants.

*Corbett, Siderius & Lonergan* and *C. R. Lonergan,* for respondent.

*Ralph B. Potts* and *Sten H. Dagg,* amici curiae.

HALE, J.—May 27, 1963, the City Council of Seattle, by resolution No. 18168, announced its intention to create a local improvement district for the construction of a sanitary sewer system along Westlake Avenue North, Fairview Avenue East, and other connecting streets on the circumference of Lake Union. The proposed sewer system would collect all raw sewage theretofore going into Lake Union and carry the sewage to treatment plants operated by METRO (Municipality of Metropolitan Seattle). Cost of the proposed sewer system would be paid in part by local improvement district assessments upon property within the district and partly from the Seattle city treasury.

Respondent corporation owns all of block 70, Lake Union

\*Reported in 418 P.2d 1008.

Shorelands, consisting of seven lots parallel to and abutting the street in which the sewer was to be built. Parts of block 70 lie more than 90 feet back from the marginal lines of the abutting street containing the sewer, and parts of the block are submerged beneath Lake Union. Respondent utilizes the land for the purposes of operating thereon a charitable enterprise known as St. Vincent de Paul.

With the adoption of resolution 18168, notice of a preliminary hearing on the LID (RCW 35.43.150) was given to each property owner subject to assessment, and respondent was informed therein that its assessment would be $21,427.41 for block 70 and that the assessments would be computed "on the basis of a rate per square foot of property."

After preliminary hearing in accordance with the notice prescribed by RCW 35.43.150, there being insufficient protests under RCW 35.43.180 to divest the city of jurisdiction to go forward with the project, the city adopted ordinance 92174, establishing LID No. 6284 in accordance with RCW 35.43.080, and assessing the property of the district "in accordance with the special benefits to be derived from the improvement." Thereupon, the city began construction and in due course completed the project.

After completion, the city, pursuant to RCW 35.44.070 and 35.44.080, notified respondent July 9, 1965, in writing, that the proposed final assessment for all of block 70 would be $24,796.11, plus $2,017.80 each for two side sewers and $2,205.90 for a third side sewer. This notice additionally informed respondent that the streets and sewers committee of the Seattle City Council would convene August 10, 1965, to consider the assessment roll of LID No. 6284 and hear objections thereto.

Pursuant to this notice of July 9th, respondent filed 16 separate points of objection by letter with the committee before August 10, 1965, but, prior to appearing before the committee to prosecute these objections to the assessment roll or receiving a decision thereon, brought this suit in superior court. Respondent therein sought an injunction to prevent the streets and sewers committee of the Seattle City Council from proceeding further to assess its property

under resolution No. 18168, setting forth four separate causes of action.

In view of the disposition to be made by us, we need not set forth the four causes of action or the seven affirmative defenses interposed by the city thereto. From a decree of permanent injunction prohibiting the city from placing a lien upon or confirming the assessment roll as to respondent's property, the city appeals. We reverse for the following reasons:

■ After completion of the sewer project and while it was in operation and serving respondent's property, respondent, as we have indicated, filed timely objections to the assessment roll with appellant city, pursuant to RCW 35-.44.080(1), which says:

> The notice of hearing upon the assessment roll shall specify the time and place of hearing and shall notify all persons who may desire to object thereto:
>
> (1) To make their objections in writing and to file them with the city or town clerk at or prior to the date fixed for the hearing;

This provision sets forth in comprehensive fashion the many actions which may be taken by the city after a hearing on the objections as follows:

> (3) That at the hearing the council will consider the objections made and will correct, revise, raise, lower, change, or modify the roll or any part thereof or set aside the roll and order the assessment to be made de novo, and at the conclusion thereof confirm the roll by ordinance.

At the time of the commencement of this action in superior court, appellant city had not held a hearing on respondent's objections or made any disposition thereof, and the objections were at the time pending. Thus, the City Council of Seattle, under the controlling statutes, still has jurisdiction over respondent's objections to the proposed assessment roll.

The statute provides the exclusive methods by which one's objections to confirmation of the assessment roll may be heard. RCW 35.44.190 states:

Whenever any assessment roll for local improvements has been confirmed by the council, the regularity, validity, and correctness of the proceedings relating to the improvement and to the assessment therefor, including the action of the council upon the assessment roll and the confirmation thereof shall be conclusive in all things upon all parties. They cannot in any manner be contested or questioned in any proceeding by any person unless he filed written objections to the assessment roll in the manner and within the time required by the provisions of this chapter and unless he prosecutes his appeal in the manner and within the time required by the provisions of this chapter.

No proceeding of any kind shall be commenced or prosecuted for the purpose of defeating or contesting any assessment or the sale of any property to pay an assessment or any certificate of delinquency issued therefor, or the foreclosure of any lien therefor, except that injunction proceedings may be brought to prevent the sale of any real estate upon the ground (1) that the property about to be sold does not appear upon the assessment roll or, (2) that the assessment has been paid.

RCW 35.44.200, 210, 230, 250, and 260 set forth the prescribed procedures for reviewing the decisions of the legislative body or city council in ruling on such objections to the assessment roll. The statute likewise prescribes the procedures for review thereof by the superior court and the Supreme Court. Respondent, after filing its objections with the legislative body, pursued none of these prescribed procedures or remedies. Indeed, it could not for its objections had not yet been heard or disposed of by the committee of the city council.

The decision of a municipal legislative authority is final and conclusive upon any objections made in the manner and within the time prescribed, subject to a limited review by the superior court. Just as it is critical that the parties abide by the designated procedures in making their objections known at the hearing or confirmation at the local level, the same also is true in taking appeals to the superior court. Trautman, Assessments in Washington, 40 Wash. L. Rev. 100, 128 (1965).

Because the statutes prescribe the methods to be followed

and the remedies available in a challenge to the LID assessment roll or liens thereby created, the superior court was without jurisdiction to consider petitioner's objections to the assessment or to grant the injunction.

The cause is reversed and the injunction vacated without prejudice to respondent to pursue its remedies in accordance with the aforementioned statutes.

ROSELLINI, C. J., HILL, DONWORTH, FINLEY, WEAVER, HUNTER, and HAMILTON, JJ., and BARNETT, J. Pro Tem., concur.

December 14, 1966. Petition for rehearing denied.